Jason Honaker SBN 251170
851 Burlway Road, Suite 208
Burlingame, CA 940101
650.259.9203 p 877.218.4033 f
Jh@honakerlegal.com

Attorney for Debtor
Ophelia Alvarez

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Ophelia Alvarez<br><br><br>Debtor. | Case No.:15-30180<br>Chapter 13<br><br>EX PARTE MOTION TO RECONSIDER<br>DISMISSAL OF CASE |

1. This case was dismissed, orally, at hearing on August 21, 2019 at 1:10 P.M. A written order followed the same day, docket item no. 36.

2. David Burchard appeared on his behalf as the Chapter 13 Trustee at that hearing. I appeared on behalf of the debtor.

3. Mr. Burchard requested dismissal of the case based on the following items to my recollection:

    a. Failure to notify creditors of bankruptcy

    b. Failure to notify previously omitted creditors

    c. Lack of amended plan

       d. Lack of collateral description in Schedule D
       e. I do not remember if he brought up payment issues, but he generally has in cases where the debtor is behind.
       f. Implicitly, he was also arguing for dismissal by his written motion to dismiss filed before the July hearing which included other items beyond what is mentioned above.

4. The court had to have been left with an impression that there had been little or no progress on the case, and that there was little or no advocacy by me on my client's behalf since this case was called the prior month.

5. Mr. Burchard did not request dismissal of the case in July, and I accepted the criticism over last-minute fixes and filings that month on behalf of my client and my limited availability in early July around the holiday.

6. The prosecution of the case since July, however, has been very active and both my client and I have been making our best efforts to prosecute the case. As mentioned above, the Court was left with the impression that there had been almost no actual progress or anything done on this case since July; that it had simply languished.

7. In fact, I have been regularly communicating with Mr. Burchard's attorney, Brisa Ramirez.

8. Ms. Ramirez and I had e-mail exchanges specifically on this case on: August 7th, August 8th, August 16th, and August 20th.

9. The subject of those e-mails was the progress of this case, or substantive and technical issues about this case.

10. **Critically, in the August 7th and August 16th e-mail exchanges, Ms. Ramirez said another problem with our plan on file was that Mr. Burchard objected to the proposal to sell the house. She informed me that he wanted the house sold in 6 months from the filing date, which is actually only about one month away. (The case was filed on March 25th.)**

11. There would be major logistical problems with selling the house so soon that would result in a poor outcome for my client and fail to maximize the value of the estate. There would also arguably be no point in trying to confirm the case if it provides for an immediate sale and was not confirmable in August.

12. Accordingly, after further discussion with the client and attempts to get her to address a problem over missed post-petition mortgage payments that was preventing the case from going forward, I suggested to Mr. Ramirez that we compromise and give the debtor until February 2020 to sell the property. I made this compromise offer five days before the hearing, on August 16th. She wrote me back that day and said she would ask Mr. Burchard. At the time of the hearing, I had not heard back on this proposal.

13. I also wrote Ms. Ramirez on August 16th that I had uploaded a certificate of service that showed a number of documents were served on July 16th. I missed the reply email from my vendor in July, so that is why I took specific remedial

action to write Ms. Ramirez once it got uploaded the week before the motion to dismiss hearing.

14. The certificate of service was the proof that all the notice and omitted creditor issues were fixed.

15. A review of the certificate of service clearly shows that the omitted creditors were in fact served with the notice of bankruptcy; that the amended plan was served on all creditors with notice and opportunity to object, and the omitted creditors had been added to the service list/creditor matrix. These items had been fixed over a month before the hearing; the proof was filed the week before the hearing. I believe Mr. Burchard was not aware of this, and this would have made him think the case was being neglected.

16. I also had prepared a short document that updated the status of the case the prior week. It was an attempt to narrow down issues that I could refer to at the hearing since it was not clear form the docket what was happening and that we were working on the case. I wanted to summarize where the case stood since there were a lot of issues in July, and I thought my client was an underdog due to payment issues. I sent that document to Ms. Ramirez Monday night and also filed it.

17. Other issues, to the best of my recollection over what was said at the hearing, that apparently were basis for the dismissal, were the lack of an updated schedule with collateral description and an amended plan.

18. As noted above, I was waiting to hear back from Mr. Burchard's office on my proposed plan compromise on the date of

the sale of the property.  That is why there was no amended plan.

19.   Valuation of the car had been dropped; it had been an issue on the motion to dismiss because the plan on file reflected valuation of the Honda.  This issue was dropped first because Ms. Alvarez said she had a co-signer (this is unclear from the POC); more importantly, she does not drive the car and wants to surrender it now- she is certain.

20.   It was my intention to have Ms. Alvarez sign the new plan after a compromise with the Trustee was reached, and approve the minor schedule amendment to describe collateral and an amended schedules declaration the same day.  I do not think the trustee would consider this particular issue (collateral description) major.

21.   The other outstanding issues, which I summarized in my emailed statement to Ms. Ramirez were the problems over plan payments and mortgage payments, or the declaration that relied on the mortgage payments being made.

22.   My client and I are aware those are important issues.  The client had, in fact, filed a direct payments declaration that admitted not all payments had been made last month (I am unsure but the court may have asked whether this had happened at the hearing or been under the impression none was filed.  This happened in mid-July and clearly should not have been an issue re filing the document).   No amendment to this declaratoin was filed because the missed payment was still not fixed -  Ms.

Alvarez maintained until last week that the lender continued to tell her she was post-petition current.

23. I feel confident the court thought that this case was failing based on advocacy and no-prosecution issues and not payment issues, and I do not believe there was any real discussion of Ms. Alvarez's missed payments during the hearing as a basis for dismissal.

24. If the payments were not the basis of the dismissal, I would submit that this case should not have been dismissed because it was being prosecuted.

25. Additionally, on the day of the hearing my client informed me that she had made a payment to bring the payments to the trustee current. She forwarded me the TFS email which I have since sent to Ms. Ramirez recently. (The payment was canceled after the case was dismissed but could be immediately reinstated if the court grants this motion.)

26. This case is a 100% plan, and my client has paid in a lot of money to the trustee and shown up for a 341 to identify herself. She has been less hard to reach recently, and I believe she can cooperate with everything and the case will turn on payments as the only issue if reinstated.

27. I have submitted a very large amount of additional information that I was prosecuting this case on my client's behalf, and that there were substantive negotiations going on behind the scenes, through the ordinary and appropriate channel, over the sale of the house, which perhaps was the single most critical issue in the case.

28. My client and I take responsibility for filing the amended documents late in July before that hearing, and I also take responsibility for uploading a certificate of service five days before this hearing when I could have uploaded it sooner. I did remedy this though by reaching out to my counterparty the week before the hearing.

29. I certainly do not think there was any attempt at "gotcha" litigation by Mr. Burchard's office, but I do think the record suggests the Trustee was probably not aware of the primacy of the sale date negotiations to the amended plan, or that we remedied the notice and service issues and did not intend to value the car in our next plan.

30. A remaining issue: there was an objection to confirmation by the lender. While I did write the lender's attorney asking that they withdraw the objection based on the mid-July plan amendments before the hearing, I was aware that I was going to be amending the plan again primarily over the sale date based on negotiations with the trustee. In addition, I was contemplating having to reduce the initial plan payments down since my client was behind and needed money for the mortgage payments holding up the 341, which would have created a new problem potentially with the lender's expectation for certain fixed payments. In short, I did not think there was any realistic chance of making progress on that creditor objection until the new plan was ready, after the trustee and I reached an agreement on a sale date.

31. As a practical matter, with her home in foreclosure Ms. Alvarez will have no choice but to file another Chapter 13 bankruptcy to prevent it from being foreclosed. This case essentially presents the question of whether we want to let it move forward, or start it over from the beginning. I would submit that it would be more efficient to let this case move on. The debtor has considerable difficulty producing proof of income and other documents and will have to re-enter that process. Creditors will have to file new claims and new objections to confirmation. Reinstating this case will probably put Ms. Alvarez on a faster track to selling the property than putting her in the position to start over. She would like to do so, however, due to the uncertain outcome of motion practice in a hypothetical future case. Notably, this case or a future case would be 100% plans.

Requested Relief

The reasonable remedy is for the dismissal to be vacated and for the automatic stay to be deemed in place. The case should be calendared for a hearing next month or October on the regular 1:10 p.m. calendar. At that hearing, my client should be prepared to show, at minimum, that she has filed a plan with a new property sale date, that the case is entirely current, and that she made progress on having the creditor objection resolved or will set it for a hearing on the next available confirmation calendar.

# DECLARATION

I, Jason Honaker, am counsel for the debtor. I hereby state:

1. I have made many factual representations about my conversations with the trustee's office and my progress on this case. They are true.
2. I have acknowledged my imperfect recollection over hearings. That information is available to the court on the record, but I do not have time to obtain it due to the time-sensitive nature of the relief sought.
3. Where noted, I have e-mails in my inbox over my discussions with the trustee and e-mails to the trustee's attorney.
4. My client's property was in foreclosure when this case started, and I believe it could be foreclosed very quickly.
5. I have exchanged a very large number of e-mails with Ms. Ramirez since the hearing, trying to negotiate terms where the trustee would agree to reconsideration or reinstatement. There is one offer outstanding, but over a week has passed since the hearing so I believe it is important to move for relief promptly.
6. I understand the lack of timely payments on the mortgage and trustee payments are a major sticking point on these discussions.

7. From my perspective, those issues were not the basis of the dismissal though, but perceived lack of prosecution of the case.

8. I understand this may seem too convenient that there is an explanation for why every document was not filed. I do, however, believe I have straightforward proof of all the work that was being done that I said was being done. In addition, I believe that ordinarily, I would have had an opportunity to present this information to the Court.

9. I am not critical of Mr. Burchard's office. Instead, I believe that ordinarily, I would have been able to explain, particularly, that I was in regular contact with his attorney and we were discussing the property sale date and how the notice issues were fixed in July.

10. A misunderstanding, combined with an overall tense environment probably informed by a prior hearing and the fact the docket and Mr. Burchard's notes simply did not reflect all the work that was being done and had been done, made that impossible.

11. I do not know, but think it is certainly possible that the trustee would have agreed to give my client until the catch-up date to be current, or for an amended plan by then to bring her current if he was fully aware of our progress as described above. Once we reached a compromise on the sale date, the amended plan and related documents could have been ready by the end of

the month or sooner. The creditor objection could have then been set for a hearing.

As to the factual assertions above, I swear under penalty of perjury that they are true. Any assertions made to the best of my memory or recollection are true to the best of my belief.

August 29, 2019

/s/ Jason Honaker